On respondent EVI Corporation's petition for attorney fees filed April 6, and appellants' objections to respondent EVI Corporation's petition for attorney fees and request for findings under ORAP 13.10(7) filed April 20 (opinion filed March16, 2011, 241 Or App 550, 251 P3d 216), petition for attorney fees denied July 20, 2011

SYNECTIC VENTURES I, LLC,
an Oregon limited liability company;
SYNECTIC VENTURES II, LLC,
an Oregon limited liability company;
SYNECTIC VENTURES III, LLC,
an Oregon limited liability company,
*Plaintiffs-Appellants,*

*v.*

EVI CORPORATION,
an Oregon corporation,
dba Endovascular Instruments, Inc.;
SYNECTIC VENTURES IV, LLC,
an Oregon limited liability company;
SYNECTIC VENTURES V, LLC,
an Oregon limited liability company;
and SYNECTIC ASSET VENTURES, LLC,
purportedly an Oregon limited liability company,
*Defendants-Respondents.*

Multnomah County Circuit Court
060404199
A139879 (Control); A142184

261 P3d 30

Kevin H. Kono and Davis Wright Tremaine, LLP, for petition.

Gary M. Berne, Scott A. Shorr, Mark A. Friel, and Stoll Stoll Berne Lokting & Shlachter PC for response.

Before Sercombe, Presiding Judge, and Armstrong, Judge, and Wollheim, Judge.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

Plaintiffs brought an action against defendant EVI Corporation (defendant) and others to collect on a promissory note and foreclose a security interest under the terms of a loan agreement. Defendant prevailed at the trial court level and on appeal. *Synectic Ventures I, LLC v. EVI Corp.*, 241 Or App 550, 251 P3d 216 (2011). Defendant now petitions for an award of its attorney fees on appeal. For the reasons stated below, we deny defendant's petition.

Defendant seeks the attorney fees allowed by the terms of the note and warrant purchase agreement. The relevant provision of that agreement provides:

> "If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the Note, the Warrants, or the Security Agreement, the prevailing Parties shall be entitled to reasonable attorneys' fees, costs, and disbursements in addition to any other relief to which such Party may be entitled."[1]

Defendant contends, and plaintiffs do not dispute, that the underlying action was to "enforce or interpret the terms" of the agreement. According to defendant, the "text of the contract unambiguously demonstrates the parties' intent that the prevailing party recover fees in any action under the contract, whether the action is in the trial court stage or, as here, in the appellate court stage[.]"

Plaintiffs respond that the case law requires an attorney fees provision in a contract to expressly reference appellate proceedings in order to recover fees incurred during an appeal. Plaintiffs are correct. In *Adair v. McAtee*, 236 Or 391, 396, 388 P2d 748 (1964), the court held that "attorney's fees will not be allowed upon appeal in the absence of a statute so providing or in the absence of an express agreement that the prevailing party is entitled to attorney's fees on appeal."

---

[1] Separate provisions in the promissory note and security agreement allow the "secured parties" to recover "costs and expenses reasonably incurred * * * including * * * reasonable attorneys' fees" upon "the occurrence of an Event of Default." Defendant does not contend that those provisions mean anything different than the attorney fees provision in the note and warrant purchase agreement.

The *Adair* holding has been followed in subsequent Supreme Court opinions. *See, e.g., Blue Ribbon Bldgs. v. Struthers*, 276 Or 1199, 1206, 557 P2d 1350 (1976) (appellate attorney fees denied where contract stating obligation to pay "reasonable attorney's fees for consultation and/or such litigation" held not to "specifically provide for attorney fees on appeal"); *Dean Vincent, Inc. v. Krishell Lab.*, 271 Or 356, 361, 532 P2d 237 (1975) (contract provision allowing for reasonable attorney fees "[i]n case of suit or action on this contract" held to be only a general provision for attorney fees that did not permit an award of fees on appeal).

We have applied the *Adair* rule in a number of cases. In *RPR Landholding Partnership v. Safeway Stores, Inc.*, a contract provision provided that, in every action to enforce the terms of the agreement, "the successful party * * * shall then be entitled to receive * * * a reasonable sum as attorneys' fees and costs." 128 Or App 304, 306, 879 P2d 186 (1994). We denied appellate attorney fees to the party who prevailed in a dispute about that agreement before our court, reasoning that "[t]he provision in this case does not specifically provide for the recovery of attorney fees *on appeal*. Absent such a specific provision, attorney fees on appeal may not be awarded." *Id.* at 307 (emphasis in original). *See also Malot v. Hadley*, 102 Or App 336, 340, 794 P2d 833 (1990) ("The rule is clear: Attorney fees cannot be allowed *on appeal* in the absence of express language authorizing attorney fees *on appeal*." (Emphases in original.)); *id.* at 340 n 3 ("The rule in *Adair* is still the law.").

Defendant counters that a different result should be reached based on more contemporary principles of contract construction than used by the court in *Adair*. In *Adair*, the sales contract provision provided that "in case suit or action is instituted to collect said sum or any part thereof, purchaser promises to pay such additional sum as the Court may adjudge reasonable as Attorney's fees in such suit or action." 236 Or at 394. In assessing whether the prevailing plaintiff on appeal should be allowed fees, the court recognized that its cases on that issue were "in hopeless confusion" because of "the early pronouncement of this court to the effect that a party has no right to an attorney's fee on appeal in the absence of a statute authorizing it." *Id.* The opinion then

referenced some cases that followed that rule and some others that did not. *Id.* In more recent cases that were decided prior to the formation of the contract in dispute, however, the court concluded that it had been less equivocal, holding that "in the absence of an express provision for attorney's fees on appeal they would not be allowed." *Id.* at 395. The court continued:

> "And even before these latter cases were handed down, apparently it was generally understood among the members of the bar that a general contractual stipulation for attorney's fees would not include attorney's fees on appeal, for out of all the appealed cases involving contracts usually containing a provision for attorney's fees there have been relatively few in which the prevailing party has petitioned the court for such fees.
>
> "Were it not for the foregoing considerations we would hold that a general contractual provision for attorney's fees would include allowance for services rendered upon appeal. But in view of the circumstances recited above, we are of the opinion that the confusion should be resolved by the prospective action of the legislature, and that until it is so resolved attorney's fees will not be allowed upon appeal in the absence of a statute so providing or in the absence of an express agreement that the prevailing party is entitled to attorney's fees on appeal."

*Id.* at 395-96.

Defendant argues that the court's method of construing contracts in *Adair*—relying upon a common understanding of the members of the bar—has been implicitly overruled by more contemporary cases on interpreting contractual terms. Defendant points to the method for judicial interpretation of a contract announced in *Yogman v. Parrott*, 325 Or 358, 937 P2d 1019 (1997), which requires courts to (1) examine the text in context; (2) consider extrinsic evidence of the parties' intent (where the text is ambiguous); and (3) if necessary, resort to maxims of construction. Defendant asks that we apply that analysis to the attorney fees provision in this case and construe it to allow appellate attorney fees, notwithstanding *Adair*.

*Adair* espouses the principle that parties to a contract will be presumed to have intended that a particular contract provision will possess the meaning given to it by a previously published decision of the appellate courts. That principle is consistent with *Yogman*, inasmuch as the judicial gloss is extrinsic and conclusive evidence of the parties' intent. Thus, in the face of a clear decision from the Supreme Court as to the legal effect of a general attorney fees provision—a decision that preceded execution of the agreement in question—we are not at liberty to infer any different intent of the parties as to the meaning of their attorney fees provision.

Petition for attorney fees denied.